UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
INTERNATIONAL ASSOCIATION OF BRIDGE,      :
STRUCTURAL, ORNAMENTAL AND                :
REINFORCING IRON WORKERS  UNION           :
LOCAL 361 and TRUSTEES of the IRON WORKERS :        Civil Action No.
LOCALS 40, 361 & 417 UNION SECURITY FUNDS :
                                          :
               plaintiffs,                :
         v.                               :
                                          :
LOW-BID INC., PREMIER STEEL INC., J. MCNULTY :
ENTERPRISES and GEORGE T. MCNULTY          :
                                          :
               defendants.                :
-------------------------------------------------------------------X

## COMPLAINT

Plaintiffs, INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL, ORNAMENTAL AND REINFORCING IRON WORKERS UNION LOCAL 361 ("Local 361" or the "Union") and TRUSTEES of the IRON WORKERS LOCALS 40, 361 & 417 UNION SECURITY FUNDS, by and through their attorneys, Colleran, O'Hara and Mills L.L.P., as and for their Complaint against Defendants, LOW BID, INC., PREMIER STEEL INC., J. MCNULTY ENTERPRISES and GEROGE T. MCNULTY (collectively the "Defendants"), respectfully allege as follows:

## INTRODUCTION

1.      This is a civil action brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001, *et seq*., and §301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185, by Trustees of multiemployer benefit funds sponsored by Iron Workers Union Locals 40, 361 and 417, and the Union, to recover benefit fund contributions owed

1

to them under the terms of a Collective Bargaining Agreement ("CBA") and trust fund documents, from a signatory employer and/or its alter ego identities.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, 29 U.S.C. §§1132(a)(3), 1132(e)(1) and 1132(f).

3.      The Court also has jurisdiction pursuant to §301 of the LMRA, 29 U.S.C. §185, as Defendants have violated the terms of a CBA between an employer and a labor organization.

4.      Venue lies in this District under 29 U.S.C. §1132(e)(1) and 29 U.S.C. §185(a), as Defendants have their principle place of business in this District and the Funds are administered here.

## THE PARTIES

5.      TRUSTEES of the IRON WORKERS LOCALS 40, 361 & 417 UNION SECURITY FUNDS (the "Trustees") are Trustees and Fiduciaries of the Funds within the meaning of 29 U.S.C. §1002(21)(A).   The Trustees have discretion and control over the assets and administration of the Funds.

6.      The Funds are "employee benefit plans" and "multiemployer plans" within the meaning of 29 U.S.C. §1002(3) and (37), with their principal place of business at 451 Park Avenue South, New York, NY 10016.   The Funds are jointly administered by a Board of Trustees, comprised of an equal number of labor and management representatives in accordance with Section 302(c)(5) of the LMRA, 29 U.S.C. §186(c)(5).

7.      Local 361 is a "labor organization" within the meaning of Section 2(5) of the LMRA, 29 U.S.C. §152(5), which represents iron workers throughout Long Island, Brooklyn and Queens, with its principle place of business at 89-19 97th Avenue, Ozone Park, NY 11416.

8.      LOW BID, INC. ("Low Bid"), is a foreign corporation duly authorized to conduct business in the State of New York with offices at 125 E. Broadway, Suite 507, Long Beach, NY 11561.

9.      PREMIER STEEL INC. ("Premier Steel") is a New York corporation located at 1097 Suffolk Avenue, Brentwood, NY 11717.

10.     J. MCNULTY ENTERPRISES ("JM Enterprises") is an inactive New York company previously located at 125 E. Broadway, Suite 507, Long Beach, NY 11561.

11.     GEORGE T. MCNULTY ("George McNulty") is a resident of the State of New York who is currently domiciled in the State of Florida.

12.     At all relevant times, George McNulty was an officer of JM Enterprises and is currently president of both Low Bid and Premier Steel.  Upon information and belief, at all times relevant hereto, George McNulty exercised operational control over JM Enterprises, Low Bid and Premier Steel; controlled significant business functions of JM Enterprises, Low Bid and Premier Steel; determined employee salaries for JM Enterprises, Low Bid and Premier Steel; made hiring and firing decisions for JM Enterprises, Low Bid and Premier Steel; acted on behalf of and in the interest of JM Enterprises, Low Bid and Premier Steel; supervised and controlled employee work schedules and other conditions of employment; and was primarily responsible for devising, directing, implementing and supervising labor relations for JM Enterprises, Low Bid and Premier Steel.

## STATEMENT OF FACTS

13.     JM Enterprises, Low Bid and Premier Steel are or were construction companies engaged in the erection of structural iron work in New York City and its vicinity.

14.     JM Enterprises was founded by Defendant George McNulty's father, James McNulty.  Beginning in 2007, JM Enterprises became a signatory employer to collective bargaining agreements with Local 361.

15.     At some point after 2007, JM Enterprises began doing business as Low Bid.

16.     Low Bid also performs work under the Premier Steel name.

17.     Low Bid and Premier Steel are both run out of the same offices at 125 E. Broadway, Suite 507, in Long Beach, NY.

18.     Low Bid is a signatory employer to a collective bargaining agreement with Local 361 (the CBA), a copy of which is annexed hereto as Exhibit "A".

19.     Section 4 of the CBA requires that signatory employers perfroming any work on a jobsite within the geographical territory and trade covered by Local 361, whether as a single or joint Employer or a successor and/or alter ego entity to a signatory to the CBA, the terms and conditions of the Agreement, including the wage and fringe benefit provisions apply to such work.

20.     Section 2 of the CBA identifies all work regarding, *inter alia*, the erection and installation of iron work that requires the use and employment of members of Local 361.

21.     Section 2 of the CBA further requires that no one but Union workers shall be employed on any work within Local 361's geographical jurisdiction.

22.     The CBA specifies the wages and Fund benefit contributions that signatory employers are obligated to pay for work performed by Local 361 represented employees.

23.     The CBA further provides that in the event that any employer becomes delinquent to the Funds and a principal, officer, majority stockholder or person who maintains de facto control over said employer becomes a principal, officer, majority stockholder or person who maintains de facto control over any other entity which performs the same work described in the CBA, then that

entity is also subject to all the rights and remedies set forth therein, including, but not limited to, collection of the former employer's debt.

24.     The CBA explicitly refernces and incorporates the various declarations and agreements of trust of the Funds.

25.     The CBA and the various agreements and declarations of trust that govern the Funds require employers who are signatories to the CBA to contribute to the Funds on behalf of workers who perform work covered by the CBA, at specified rates for each hour of covered work paid, subject to certain limitations and premium payments set forth therein.

26.     The CBA and the various Fund agreements and declarations of trust require signatory employers to submit electronic reports ("remittance reports") and contributions to the Funds, which identify those workers who performed work covered by the CBA and to state the number of hours each such worker worked in covered employment.  These remittance reports and contributions are required to be submitted to the Funds no later than the 15th day of each month for the preceding month's work.

27.     The remittance reports are intended to be an Employer's monthly statement of the number of hours worked in covered employment.

28.     The Funds rely on the remittance reports to determine the level of benefits, if any, that are to be provided to the workers listed in the reports.

29.     Section 24 of the CBA provides that if an employer fails to remit contributions by the due date, the Trustees of the various Funds may seek any remedy provided therein or by law.

30.     Section 39 of the CBA prohibits an employer from sub-contracting any covered work to any person, firm, or corporation which is not already in a contractual relationship with the Union.

31.     Upon information and belief, Premier Steel is an alter-ego of Low Bid and performs construction bargaining unit work within the craft and geographical jurisdictions of Local 361.

32.     Upon information and belief, Low Bid and Premier Steel are successor entities to JM Enterprises and perform construction bargaining unit work within the craft and geographical jurisdictions of Local 361.

33.     Upon information and belief, JM Enterprises, Low Bid and Premier Steel are a single employer and perform construction bargaining unit work within the craft and geographical jurisdictions of Local 361.

34.     JM Enterprises, Low Bid and Premier Steel share common ownership, common management, common supervision (in the person of George McNulty and/or his family members), share a common business purpose (erection and installation of iron work), and upon information and belief, share common operations, employees, customers, and equipment.  Upon information and belief, JM Enterprises, Low Bid and Premier Steel hired employees who shared similar working conditions, job classifications, similar skills and job functions.

35.     Upon information and belief, at all times relevant to this action, JM Enterprises, Low Bid and Premier Steel disregarded corporate formalities and transferred funds between JM Enterprises, Low Bid and Premier Steel.  George McNulty also frequently negotiated grievances with the Union on behalf of JM Enterprises, Low Bid and Premier Steel.

36.     Upon information and belief, Low Bid used Premier Steel to avoid obligations under the CBA, including its obligation to make contributions to the Funds for work performed by covered workers.

37.     Upon information and belief, Premier Steel repeatedly failed to employ members of Local 361 to perform the erection and installation of iron work at projects located within the

geographical jurisdiction of Local 361.

38.     The above described work performed is within the craft jurisdiction of Local 361.

39.     JM Enterprises, Low Bid and Premier Steel failed to pay for work performed at projects within the craft jurisdiction of Local 361 by union members.

40.     JM Enterprises, Low Bid and Premier Steel did not make the required fringe benefit contributions to the Funds for work performed at projects within the craft jurisdiction of Local 361 by union members.

41.     Based on the foregoing, Defendants have been operated in such a way that they are alter egos of each other.

42.     Based on the foregoing, Defendants have been operated in such a way that they constitute a single employer.

43.     Based on the foregoing, Defendants have been operated in such a way that they constitute a double-breasted employer, established to avoid Low Bid's obligations to the Funds, in violation of the CBA.

44.     As an alter-ego, single employer and/or double-breasted employer, JM Enterprises, Low Bid and Premier Steel are bound to the CBA between Local 361 and Low Bid. Low Bid was required to report the hours worked by employees of Premier Steel to the Funds and remit contributions for the hours worked.  Low Bid is liable for all hours paid to workers who performed covered work.

45.     As alter egos, single employers and/or double-breasted employers, JM Enterprises, Low Bid and Premier Steel are bound to the CBA between Local 361 and Low Bid and are, therefore, jointly and severally liable for all hours paid to workers who performed covered work.

46.     By way of background, the Funds first learned of Low Bid's double-breasted operation back in 2018.

47.     Upon learning of this double-breasted operation and first obtaining evidence at projects referenced as: "P.C. Richard"; "Republic Airport Shelter"; "Gabresk Airport – Westhampton Shelter"; "Raymour & Flanigan (Flatbush Brooklyn)," the Union brought contract grievances against Low Bid for violations of the CBA.

48.     In accordance with the terms of the CBA, the grievance was brought before an impartial arbitrator for an award and order.

49.     The Impartial Arbitrator found that George McNulty, as President and Principal of Low Bid, had authority to bind the company.  The Impartial Arbitrator issued a Consent Award and Order (the "September 23, 2018 Consent Order") that was ultimately never signed by George McNulty, nor complied with by Low Bid.  A copy of which is annexed hereto as Exhibit "B".

50.     The Funds have conducted various audits of Low Bid and JM Enterprises for the period of November 1, 2009, through April 7, 2019, pursuant to the terms of the CBA.  The audits indicate that Defendants owe an outstanding principal amount of $537,888.89 to the Funds pursuant to the terms of the CBA.

51.     The Union has since become aware of multiple violations of the CBA where Low Bid has performed covered work but employed Premier Steel employees in order to avoid paying Union wages or benefits.

52.     Defendants continue to violate the terms of the CBA and the September 23, 2018 Consent Order.

53.     Accordingly, Plaintiffs' only recourse is to pursue these claims herein.

54.     Furthermore, Low Bid has failed to produce sufficient books and records for the

Funds' auditors to complete all audits obligated under the terms of the CBA.

55.     Given George McNulty's history and ongoing disregard for the CBA and the September 23, 2018 Consent Order, and Low Bid's failure to produce adequate books and records for an audit, it is clear that Defendants continue to operate an alter-ego and/or double-breasted operation.  Local 361 is entitled to the lost man hours as a result of Defendants' sham operation.

## AS AND FOR A FIRST CLAIM FOR RELIEF

56.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "55" of this Complaint as though fully set forth herein.

57.     By reason of the aforementioned, at all relevant times, Premier Steel as the alter-ego of Low Bid was and remains bound by the terms and conditions of the CBA and the various Fund agreements and declarations of trust.

58.     The CBA and the various Fund trust indentures provide, *inter alia*, for an employer, and any related company, to pay wages on behalf of its employees who perform covered work under such agreements, and fringe benefit contributions to the Funds.

59.     Defendant Low Bid has breached the Agreement and the various Fund trust indentures by failing, refusing, and/or neglecting to pay wages due for covered work performed within the craft and geographical jurisdiction of Local 361.

60.     Section 515 of ERISA, 29 U.S.C. 1145, requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement…[to] make such contributions in accordance with the terms and conditions of such plan or such agreement."

61.     Section 502(a)(3) of ERISA, 29 U.S.C. 1132(a)(3), provides that a civil action may be brought "by a participant, beneficiary, or fiduciary: (A) to enjoin any act or practice of this title

or the terms of the plan; or (B) to obtain other appropriate equitable relief; (i) to redress such violation; or (ii) to enforce any provision of this title or the terms of the plan."

62.     Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2) mandates that, "[i]n any action brought by a fiduciary on behalf of a Plan to enforce §515 in which a judgment in favor of the plan is awarded, the court shall award the plan:

     a.    the unpaid contributions;
     b.    interest on the unpaid contributions;
     c.    an amount equal to the greater of;
          i. interest on the unpaid contributions; or
          ii. liquidated damages…in an amount not in excess of 20 percent of the [unpaid contributions];
     d.    reasonable attorney's fees and costs of the action, to be paid by the defendant; and
     e.    such other legal or equitable relief as the court deems appropriate…"

63.     For the period of November 1, 2009, through April 17, 2019, Low Bid is delinquent on principal contributions to the Funds in the amount of $537,888.89.

64.     Low Bid's failure to remit contributions to the Funds for hours worked by individuals performing covered work as defined in the CBA constitutes a failure to make contributions in accordance with the terms of the applicable CBA, in violation of §§502 and 515 of ERISA, 29 U.S.C. §§1132 and 1145, giving rise to an action under §502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3).

65.     Premier Steel is an alter ego of Low Bid and therefore, Low Bid is obligated under the CBA to make contributions for covered work performed by Premier Steel to the Funds.

66.     Defendants, by virtue of their failure to remit the unpaid contributions, are subject to an injunction ordering them to immediately pay all unpaid contributions and submit to audits of their books and records for all periods covered under the CBA. Public policy and the balance of equities favors injunctive relief against Defendants, requiring the Defendants to pay all past and

current delinquencies to the Funds. Without injunctive relief, the Funds and their participants and beneficiaries will be irreparably harmed.

67.     Defendants are also required to pay interest on the unpaid contributions from the date they were due to the date they are received by the Funds, plus liquidated damages, audit costs, attorneys' fees and costs in accordance with the various trust agreements and Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2).

68.     Defendants, by failing to pay contributions, interest and additional damages, as required by the CBA and the trust agreements, have violated Section 515 of ERISA, 29 U.S.C. §1145, in that they have failed to make contributions in accordance with the terms of the plan documents of the Funds, supporting an action under 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), and are subject to the remedies under Section 502(g) of ERISA, 29 U.S.C. §1132(g).

## AS AND FOR A SECOND CLAIM FOR RELIEF

69.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "68" of this Complaint as though fully set forth herein.

70.     Section 301(a) of the LMRA, 29 U.S.C. §185(a) provides that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any District Court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

71.     Section 301(b) of the LMRA, 29 U.S.C. §185(b), provides that "[a]ny labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents."

72.     Section 39 of the CBA prohibits Low Bid from employing anyone other than Union represented iron workers on any covered work.

73.     Low Bid, through its alter egos, hired workers to perform covered work and who received wages, working conditions, benefits and a standard of employment less favorable than those provided for in the CBA.

74.     Low Bid, through its alter egos, performed covered work at various jobsites, including, but not limited to, those listed in the September 23, 2018 Consent Order as: "P.C. Richard"; "Republic Airport Shelter"; "Gabresk Airport – Westhampton Shelter"; "Raymour & Flanigan (Flatbush Brooklyn)".

75.     Low Bid and its alter egos, failed to remit contribution payments to the Funds for the hours worked by these workers, in violation of the CBA and the various trust agreements.

76.     The Funds are entitled, pursuant to LMRA Section 301(a), and the CBA and trust agreements, to collect the unpaid contributions, interest, liquidated damages, attorneys' fees and costs associated with the unpaid contributions.

## AS AND FOR A THIRD CLAIM FOR RELIEF

77.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "76" of this Complaint as though fully set forth herein.

78.     George McNulty, JM Enterprises, Low Bid and Premier Steel knowingly committed fraud against the Funds by creating and orchestrating a scheme to hire outside non-Union workers through Premier Steel and omit hours worked in covered employment from the remittance reports sent by Low Bid to the Funds.

79.     George McNulty is an owner of JM Enterprises, Low Bid and Premier Steel.

80.     George McNulty made or caused to be made, materially false representations and omissions of existing facts to the Funds, by filing false remittance reports with the Funds that failed to disclose the hours being worked in covered employment through Premier Steel and knowingly

failing to pay contributions to the Funds.

81.     The Funds reasonably relied, to their detriment, on the material and false representations and omissions made by George McNulty concerning the hours of covered work of Defendants' employees.

82.     Particular facts demonstrating the creation and the operation of Premier Steel as an alter ego of Low Bid are exclusively within the Defendants' knowledge.

83.     Defendants acted in an intentional and reckless manner, consciously disregarded the Plaintiffs' rights, and showed wanton dishonesty and disregard of their obligations to the Funds. The fraudulent acts committed by Defendants exhibit a high level of moral culpability aimed at the public.

84.     Defendant George McNulty is jointly and severally liable with Low Bid for any contributions due and owing pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§1132 and 1145, based on their knowing participation in a scheme to underpay Defendant Low Bid's contributions to the Funds, plus interest, liquidated damages, attorneys' fees and costs.

## AS AND FOR A FOURTH CLAIM FOR RELIEF

85.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "84" of this Complaint as though fully set forth herein.

86.     Pursuant to the terms and conditions of the applicable CBA and trust agreements, Low Bid, is required to provide access to the records necessary for the Funds to determine whether Low Bid complied with its obligations to contribute to the Funds.

87.     Low Bid has breached the provisions of the CBA by continually failing to allow Plaintiffs to schedule and complete audits of Low Bid's and Premier Steel's books and records after demands for audits were made upon Defendant.

88.     Low Bid is obligated to pay attorney and auditor fees and court costs incurred by the Plaintiffs pursuant to the CBA, the various trust agreements and/or 29 U.S.C. §1132 (g)(2)(D).

89.     Pursuant to the CBA, the various trust agreements and/or 29 U.S.C. §1132 (g), Low Bid is obligated to pay any fringe benefit contributions shown to be due upon completion of the audit, as well as liquidated damages and interest.

90.     Pursuant to 29 U.S.C. §1132(g)(2)(B), Plaintiffs are entitled to an amount equal to the greater of: (a) double interest; or (b) interest plus liquidated damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs' respectfully request the Court enter judgment:

1.      Declaring Low Bid and Premier Steel to be alter-egos, single employers and/or double-breasted enterprises with each other;

2.      Declaring JM Enterprises, Low Bid and Premier Steel jointly and severally liable for unpaid benefit contributions and statutory and contractual damages owed to the Funds for each hour of work covered by a collective bargaining agreement between Low Bid and the Union performed by employees, including but not limited to employees hired to perform iron work erection and installation, on behalf of Low Bid and Premier Steel.

3.      Declaring that George McNulty, JM Enterprises, Low Bid and Premier Steel engaged in a scheme to defraud the Funds of employee benefit contributions;

4.      Entering judgment in favor of Plaintiffs against Defendants, jointly and severally, for injunctive relief ordering Defendants to pay all unpaid delinquencies owed to the Plaintiff Funds in an amount to be determined at trial, together with statutory and contractual interest, liquidated damages, and reasonable attorneys' fees and

costs, including the costs of collecting the delinquency, as set forth under Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2) and the trust agreements, and requiring Defendants to accurately report work covered by a collective bargaining agreement between the Union and Defendants and remain current in contributions to the Funds;

5.      Declaring that Defendants must permit Plaintiffs to schedule and complete an audit of Low Bid's and Premier Steel's books and records for all outstanding periods covered under the CBA.

6.      Awarding Plaintiffs their reasonable attorneys' fees, disbursements and costs in collecting the delinquencies and in prosecution of this action, pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(G)(2), and the trust agreements; and

7.      Ordering such other legal and/or equitable relief as the Court deems just and proper.

Dated: Woodbury, New York
       June 29, 2020

                                   COLLERAN, O'HARA & MILLS L.L.P.

                                   By: _____
                                        DAMIEN O. MAREE (DM-9301)
                                        Attorney for Plaintiffs
                                        100 Crossways Park Drive West, Suite 200
                                        Woodbury, New York 11797
                                        Telephone: (516) 248-5757
                                        Facsimile: (516) 742-1765
                                        dom@cohmlaw.com