USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/6/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INTERNATIONAL ASSOCIATION OF
BRIDGE, STRUCTURAL, ORNAMENTAL
AND REINFORCING IRON WORKERS
UNION LOCAL 361, et al.,

          Plaintiffs,

  -against-

GEORGE T. MCNULTY,

          Defendant.

20-CV-4979 (LGS) (BCM)

**MEMORANDUM AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

    As a sanction for *pro se* defendant George McNulty's failures to comply with this Court's discovery orders, plaintiffs request that McNulty be precluded from offering evidence to oppose their "alter ego claim," which, they say, would "allow[] for summary judgment on that issue." *See* Pl. Letter dated October 17, 2022 (Pl. Ltr.) (Dkt. 123) at 1-5. However, plaintiffs have not pleaded an alter ego claim against McNulty. Consequently, rather than award victory to the plaintiffs on an unpleaded claim, the Court will tailor the sanction to the pleadings, and will direct that the specific facts alleged by plaintiffs concerning McNulty's ownership, management, and operational control of the three corporate defendants, as well as his work on their behalf, be taken as established for purposes of this action.

**I.    BACKGROUND**

    Plaintiffs are a union representing iron workers (Local 361, or the Union), and the trustees of related benefit funds (the Funds). On June 29, 2020, plaintiffs brought this action pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, and § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, against three construction companies, Low Bid Inc. (Low Bid), Premier Steel Inc. (Premier Steel), and J. McNulty Enterprises (JM Enterprises) (collectively, the Corporate Defendants), to recover benefit fund

contributions owed to plaintiffs under the terms of a collective bargaining agreement (CBA) and related trust fund documents. Compl. (Dkt. 1) ¶ 1. Plaintiffs also sued McNulty, the president of both Low Bid and Premier Steel, alleging that he is "an owner of" and exercises operational control over all of the Corporate Defendants., *see id.* ¶¶ 12, 79, and that all four defendants "committed fraud against the Funds" by creating and carrying out a scheme to evade the CBA by hiring non-union workers, failing to disclose their hours worked and wages paid, and failing to make the required employee benefit contributions to the Funds on their behalf. *Id.* ¶¶ 78-84.

The three Corporate Defendants are (or were) "engaged in the erection of structural iron work in New York City and its vicinity." Compl. ¶ 13. JM Enterprises and Low Bid are signatories to the CBA. *Id.* ¶¶ 14, 18. Premier Steel is not a signatory, but is (or was) run out of the same office as Low Bid, *id.* ¶ 17, and all three Corporate Defendants "share common ownership, common management, common supervision (in the person of George McNulty and/or his family members), share a common business purpose (erection and installation of iron work), and, upon information and belief, share common operations, employees, customers, and equipment." *Id.* ¶ 34. Plaintiffs further allege, in general terms, that the Corporate Defendants "disregarded corporate formalities" and transferred funds among themselves. *Id.* ¶ 35. Thus, according to plaintiffs, "Premier Steel is an alter-ego of Low Bid." *Id.* ¶ 31; *see also id.* ¶ 41 ("Defendants have been operated in such a way that they are alter egos of each other."). Plaintiffs add that the three Corporate Defendants form "a single employer" performing "construction bargaining unit work within the craft and geographical jurisdictions of Local 361." *Id.* ¶ 33.

According to plaintiffs, "Low Bid used Premier Steel to avoid obligations under the CBA, including its obligation to make contributions to the Funds for work performed by covered workers." Compl. ¶ 36. That is, in order to avoid paying union wages and fringe benefits,

2

defendants hired non-union workers through Premier Steel, failed to report their hours worked to plaintiffs, and failed to make benefit contributions on their behalf, all in violation of the CBA. *Id*. ¶¶ 36-40, 44-45.

When plaintiffs found out that defendants were operating as a "double-breasted employer" in order to avoid their obligations to the Funds, Compl. ¶ 43,[1] they brought a grievance before an arbitrator, who "issued a Consent Award and Order" dated September 23, 2018, and found that McNulty, Low Bid's president, "had authority to bind the company." *Id*. ¶ 49.[2] However, McNulty never signed the Consent Award and Order, and Low Bid never complied with it. *Id*.

From 2009 through 2019, the Funds "conducted various audits of Low Bid and JM Enterprises," concluding that these defendants owed "an outstanding principal amount of $537,888.89 to the Funds pursuant to the terms of the CBA." Compl. ¶ 50. Since then, "[t]he Union has since become aware of multiple violations of the CBA where Low Bid has performed covered work but employed Premier Steel employees in order to avoid paying Union wages or benefits." *Id*. ¶ 51. However, Low Bid "failed to produce sufficient books and records for the Funds' auditors to complete all audits obligated under the terms of the CBA," leaving litigation as their "only recourse." *Id*. ¶¶ 53, 54.

---

[1] As explained in *Time Square Const., Inc. v. Mason Tenders Dist. Council of Greater New York & Long Island*, 2008 WL 55116 (S.D.N.Y. Jan. 2, 2008): "Subcontractors at times create 'double-breasted' operations, in which a 'unionized employer . . . creates an ostensibly separate firm with a nonunion workforce. The subcontractor then uses its nonunion company when possible and its union company only when necessary. A double-breasted operation is not *per se* illegal, but the nonunion company may be held liable for debts and other obligations of [the other], and in some cases may be bound to the collective bargaining agreement of the other entity." *Id*. at *8 (brackets and ellipses in the original; internal quotation marks, citations, and footnotes omitted).

[2] The Complaint refers to the Consent Award as "Exhibit B," but no such exhibit is attached. The Complaint does not describe the content of the Consent Award.

3

In their first claim for relief, plaintiffs seek to recover Low Bid's audited delinquency in the amount of $537,888.89 – plus interest, liquidated damages, costs, and attorneys' fees – pursuant to ERISA §§ 502(a)(3), (g)(2), 29 U.S.C. 1132(a)(3), (g)(2). *See* Compl. ¶¶ 56-68. In this claim, plaintiffs allege that because Premier Steel is an alter ego of Low Bid, Low Bid "is obligated under the CBA to make contributions for covered work performed by Premier Steel to the Funds." *Id*. ¶ 65.

In their second claim for relief, plaintiffs seek the "unpaid contributions, interest, liquidated damages, attorneys' fees and costs associated with the unpaid contributions" pursuant to LMRA § 301(a), 29 U.S.C. § 185(a), and the CBA. *See* Compl. ¶¶ 69-76. In this claim, they allege that Low Bid violated the CBA by hiring non-union workers "through its alter egos," and then violated the CBA again, as well as "various trust agreements," by failing to remit contribution payments to the Funds for "the hours worked by these workers." *Id*. ¶¶ 73-75.

In their third claim for relief, plaintiffs allege that all four defendants, including George McNulty, committed "fraud against the Funds by creating and orchestrating a scheme to hire outside non-Union workers through Premier Steel and omit hours worked in covered employment from the remittance reports sent by Low Bid to the Funds." Compl. ¶ 78. As to McNulty, plaintiffs allege that he "made or caused to be made, materially false representations and omissions of existing facts to the Funds, by filing false remittance reports with the Funds that failed to disclose the hours being worked in covered employment through Premier Steel and knowingly failing to pay contributions to the Funds," *id*. ¶ 80, and therefore that he is "jointly and severally liable with Low Bid for any contributions due and owing." *Id*. ¶ 84.

Finally, in their fourth claim for relief, plaintiffs allege that Low Bid violated the CBA by failing to allow plaintiffs to audit its books – and Premier Steel's – making it liable for double

4

interest, or interest plus liquidated damages, pursuant to ERISA § 502(g)(2)(B), 29 U.S.C. § 1l32(g)(2)(B). *See* Compl. ¶¶ 86-90.

### A.   McNulty Ignores Three Court-Ordered Answer Deadlines

Defendants were served with process on July 10, 2020 (Dkts. 14-17), but failed to answer or appear. On August 18, 2020, the Clerk of Court issued a Certificate of Default as to all four defendants (Dkt. 22), and on September 3, 2020, plaintiffs moved by order to show cause for a default judgment. (Dkt. 29.) On October 15, 2020, the Hon. Lorna G. Schofield, United States District Judge, held a telephonic default hearing, at which defendant McNulty appeared, causing Judge Schofield to set aside the Certificate of Default, refer the case to the Court-annexed Mediation Program, and stay the case pending the outcome of mediation. (*See* Dkt. 49.) She also directed McNulty to enter an appearance by October 22, 2020, and encouraged him to retain counsel. (*Id.*) On October 23, 2021 – after McNulty failed to enter his appearance – Judge Schofield directed him to do so by October 28, 2020, and warned:

> Mr. McNulty is advised that compliance with the Court's orders is not optional. Further non-compliance may result in sanctions or prejudice, including entry of default judgment against him in the manner requested by Plaintiffs.

(Dkt. 51.) Mr. McNulty failed to enter an appearance as directed. The mediation was unsuccessful. (Dkt. 53.)

On February 12, 2021, Judge Schofield so-ordered a stipulation – signed by McNulty himself – requiring defendants to answer by April 22, 2021. (Dkt. 56.) No answers were filed on that date, or for the next four months, prompting plaintiffs to move – again – for the entry of a default judgment. (Dkt. 71.) At the telephonic default hearing on September 23, 2021, no defendants appeared. However, McNulty filed a letter later that day explaining that he had technical difficulties connecting to the conference. (Dkt. 84.) On September 28, 2021, Judge

Schofield granted the default motion against defendants Low Bid and Premier Steel (Dkt. 87),[3] but, once again, vacated the default as to McNulty. (Dkt. 88.) The Court reasoned that McNulty may not have "understood his legal obligation to file on the court docket an answer or other response to the Complaint," and ordered him to do so, or "seek an extension of time to respond," by November 23, 2021. *Id.*

November 23, 2021, came and went with no answer or other response to the Complaint. On December 9, 2021, the case was referred to the undersigned Magistrate Judge for general pretrial management. (Dkt. 96.) On December 13, 2021, I gave McNulty his third Court-ordered answer deadline, directing him to respond to the Complaint by January 13, 2022, and reminding him, again, that non-compliance "may result in sanctions or prejudice, including entry of [a] default judgment[.]" (Dkt. 97 at 2.)

January 13, 2022, came and went with no answer or other response to the Complaint from McNulty. On January 25, I gave him a fourth and final deadline to respond, as follows:

> This is the fourth time since February 11, 2021 that Mr. McNulty has been ordered to answer, move, or otherwise respond to the Complaint. (*See* Dkt. Nos. 56, 88, 97.) He has thus far failed to do so. **No further extensions will be granted for any reason whatsoever**. If no answer or pleading motion is on file by February 24, 2022, plaintiffs may at any time thereafter seek a default without further order of the Court.

(Dkt. 102.) On February 23, 2022 – nineteen months after he was served with process – McNulty answered the complaint.[4]

---

[3] On September 10, 2021, plaintiffs voluntarily dismissed their claims against JM Enterprises, explaining that the company "appear[ed] to no longer be in business or on record with the New York Secretary of State." (Dkt. 83.) As of the date of this Order, Low Bid and Premier Steel remain listed as active corporations on the website of the New York Department of State, Division of Corporations.

[4] In his Sixth Affirmative Defense, McNulty asserted that Low Bid and Premier Steel were not "doing any business currently and cannot afford any payment schedule until the business recovers." Ans. (Dkt. 103) ¶ 10.

6

B.  **McNulty Ignores a Series of Discovery Orders and Then Claims to Possess No Relevant Documents**

On March 29, 2022, I held a case management conference, at which the parties appeared in person, and issued an Initial Case Management Order (Case Mgmt. Order) (Dkt. 107), directing them to exchange their automatic disclosures pursuant to Fed. R. Civ. P. 26(a)(1) by April 12, 2022, and serve their initial written discovery requests by April 28, 2022. Case Mgmt. Order ¶¶ 2-3. Because of McNulty's *pro se* status, I reviewed the automatic disclosure provisions with him in some detail during the case management conference, and reproduced them in the order itself. *Id*. ¶ 2. When I explained to McNulty that he would be required to mail or email his automatic disclosures directly to opposing counsel, he responded, "I understand." A few minutes later, when discussing potential depositions, McNulty stated that he would like to depose three individuals: Matthew Chartrand, the business manager of Local 361, to obtain "verification of documentation that I'll probably produce as an exhibit"; Robert Voories, a Low Bid employee; and a third witness, as yet unidentified. As to that individual, McNulty explained, "I'm going to go through the roster of employees and pick another one that I feel is relevant based on documentation I need to produce."

Notwithstanding McNulty's statements at the case management conference, and the clear deadlines set forth in the Case Management Order, he failed to serve any automatic disclosures on (or after) April 12, 2022. Three months later, on July 7, 2022, plaintiffs reported that McNulty had also failed to serve any responses to their document requests, which were timely served on April 22, 2022. *See* Pl. 7/7/22 Ltr. (Dkt. 113) at 1. Plaintiffs' counsel, Damien Maree, explained that the parties "met telephonically" on June 2, 2022, after which, at McNulty's request, plaintiffs re-sent him copies of their initial disclosures and document requests. *Id*. Once again, however, McNulty did not respond. *Id.*

On July 14, 2022, after McNulty failed to appear for a status conference that day,[5] I ordered him to "serve his automatic disclosures . . . and respond to plaintiffs' initial request for the production of documents[] no later than **July 29, 2022**." 7/14/22 Order at 3. In the same Order, I warned that "[s]hould he fail to do so, the Court may impose sanctions, including but not limited to the opposing party's attorneys' fees and other expenses incurred in compelling discovery compliance or as a result of defendants' delay." *Id.*

July 29, 2022 came and went with no response from McNulty. On August 29, 2022 – one month past his most recent deadline – plaintiffs notified the Court that they had "yet to receive Defendant's automatic disclosures . . . or a response to their initial request for the production of documents." *See* Pl. 8/29/22 Ltr. (Dkt. 115) at 1-2. Plaintiffs attached their First Set of Document Requests to McNulty (Pl. Doc. Req.) (Dkt. 115-1), served four months earlier. The following day, the Court ordered defendant McNulty to show cause in writing, no later than September 6, 2022, "why a default judgment should not be entered against him, or other sanctions imposed, due to his failure to comply with his discovery obligations." *See* Order to Show Cause (OSC) (Dkt. 116).

On September 5, 2022, defendant McNulty responded to the OSC with a declaration in which he stated that, after a conversation with attorney Maree following the case management conference on March 29, 2022, he "honestly thought" that he was not required to serve any automatic disclosures or written response to plaintiffs' document requests. McNulty Decl. (Dkt. 119) ¶ 6. It was not until he received the OSC, and spoke to an attorney friend, that he "realize[d] that" he "still needed to serve a formal written response to any discovery demands, and also a Rule

---

[5] The Court later learned that, three days before the July 14 conference, McNulty attempted to seek an adjournment, but – because he failed to sign or properly file his request – it was never placed on the docket of this action. *See* Order dated July 14, 2022 (7/14/22 Order) (Dkt. 114) at 1-2. As a result, the Court was unaware that any adjournment request had been made. *Id*. at 2.

8

26 Initial Disclosures." *Id.* ¶ 8. McNulty did not explain what Maree said to him on March 29 that made him believe he was not required to comply with this Court's clear directives. Nor did he explain how or why he persisted in his mistaken belief after speaking again with Maree on June 2 – at which point Maree re-served him with plaintiffs' document requests – or after receiving this Court's 7/14/23 Order, which gave him a new compliance deadline of July 29, 2022, and warned him that should he fail to comply with that deadline "the Court may impose sanctions." 7/14/22 Order at 3.

McNulty attached his initial disclosures and his response to plaintiffs' document requests to his declaration. In his initial disclosures (Dkt. 119-1), McNulty identified three persons likely to have discoverable information: himself, Robert Voories, and "Matthew Chartrin" [sic]. However, he did not identify (or produce) a single document pursuant to Rule 26(a)(1)(A)(ii) or (iv), instead writing, "None." *Id.* at 2. Similarly, in his written response to plaintiffs' document requests (Dkt. 119-2), McNulty wrote, in response to all 50 document categories sought by plaintiff, that he was "not in possession of any items responsive to these demands," even basic documents concerning his relationship to the Corporate Defendants. For example, according to McNulty, he had no documents relating to their "corporate formation" (Pl. Doc. Req. 1) and no documents identifying their owners, officers, directors, managers, or supervisors. (Pl. Doc. Req. 28, 30, 31). McNulty also denied possession, custody, or control of the Corporate Defendants' banking records (Pl. Doc. Req. 2), tax returns (Pl. Doc. Req. 11-12), collective bargaining agreements (Pl. Doc. Req. 15), financial records (Pl. Doc. Req. 16), insurance policies (Pl. Doc. Req. 40), business licenses (Pl. Doc. Req. 41), or payroll records (Pl. Doc. Req. 43). Asked about documents that "refute, in any way, any of plaintiffs' allegations" (Pl. Doc. Req. 45), McNulty similarly denied that any such documents were in his possession, custody, or control.

In an Order dated September 8, 2022 (9/8/22 Order) (Dkt. 120), I found that McNulty's OSC response was "not plausible." 9/8/22 Order at 1.

> McNulty's OSC response does not mention his June 2 conversation with attorney Maree *or* this Court's July 14 Order – *either* of which, standing alone, was more than sufficient to disabuse him of any mistaken notion that he was not required to serve automatic disclosures or written discovery responses. Notwithstanding McNulty's *pro se* status, therefore, the Court is not persuaded that his continued flouting of his discovery obligations was an honest mistake. The Court further notes that this is not the first time it has taken extraordinary measures – including a threat of default – to compel McNulty to do that which he was required to do months earlier.

*Id*. at 2. Consequently, I explained, the Court would "consider what sanction is appropriate to redress McNulty's repeated violations of its orders" at the next status conference, scheduled for October 14, 2022. *Id.*

### C.     Plaintiffs Request Preclusion Sanctions

During the October 4, 2022 status conference, plaintiffs' counsel proposed, as a sanction for McNulty's discovery misconduct, that designated facts be taken as established, pursuant to Fed. R. Civ. P. 37(b)(2)(A)(i); specifically, that McNulty was the alter ego of both of the (defaulted) Corporate Defendants, Low Bid and Premier Steel. McNulty, for his part, acknowledged that he should have complied with the Court's scheduling orders, but argued that plaintiffs could not have been prejudiced by the delay, or by his failure to produce any documents, because "they audit me every year" and as a result they already "have all the information they need." When the Court pointed out that plaintiffs requested many documents that they could not have obtained through the auditing process, such as the Corporate Defendants' tax returns, McNulty stated that he no longer had them, because "we've had hurricanes where the documents were kept, and then we also were evicted." As a result, he said, "[w]e have very little access to any type of paperwork."

At the conclusion of the October 4, 2022 conference, I asked for letter-briefs on the sanctions issue. Plaintiffs submitted their letter on October 17, 2022, requesting a slightly different

10

remedy than the one proposed during the conference. Relying primarily on *Sentry Ins. a Mut. Co. v. Weber*, 720 F. App'x 639 (2d Cir. 2017) (summary order), plaintiffs ask that the Court prohibit McNulty from "offering evidence to oppose Plaintiff's alter ego claim" pursuant to Rule 37(b)(2)(A)(ii) and, having done so, that the Court "enter a partial summary judgment order in favor of Plaintiffs' alter ego claim against McNulty." Pl. Ltr. at 1, 4.

Defendant McNulty submitted his letter on November 8, 2022, repeating his implausible claim that he did not realize, until he received the OSC, that he "still needed to serve a formal written response to any discovery demands, and also a Rule 26 Initial Disclosures." Def. Ltr. (Dkt. 125) at 1-2. McNulty explained his inability to produce any relevant documents as follows:

> I did not retain many documents from the corporate entities to begin with. At any rate, due again to my financial situation and other personal problems, I was evicted from my apartment/office [which was the registered address of Low Bid] in the middle of last August of 2021. Anything that was in the apartment, including furniture, my personal possessions and any documents were lost to me, when I was locked out of the apartment by my landlord, and never reclaimed.

*Id*. at 1. McNulty further argued, as he had during the October 4 conference, that the Union could not be prejudiced by the loss of his documents, "since it had already availed itself of access to any documents prior. Indeed, one would think that plaintiff would not have brought this case in the first place, if it did not feel that it already had the documentation to prove its case." *Id*.

## II.     DISCUSSION

### A.     Legal Standards

In relevant part, Rule 37(b) states that "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders," Fed. R. Civ. P. 37(b)(2)(A), including orders "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims," or "prohibiting the disobedient party from supporting or opposing designated claims or

11

defenses[.]" Fed. R. Civ. P. 37(b)(2)(A)(i)-(ii). The only predicates to the imposition of sanctions under Rule 37(b) are a "court order directing compliance with discovery requests" and "non-compliance with that order." *Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*, 2017 WL 2840279, at *9 (S.D.N.Y. June 27, 2017).

Rule 37(b) applies "notwithstanding a lack of willfulness or bad faith," although such factors may be "relevant . . . to the sanction to be imposed for the failure." *Oz v. Lorowitz*, 2011 WL 803077, at *2 (S.D.N.Y. Mar. 7, 2011) (quoting *Auscape Int'l v. Nat'l Geographic Soc'y*, 2003 WL 134989 at *4 (S.D.N.Y. Jan. 17, 2003)). Similarly, although prejudice to the moving party may be a "significant consideration" in selecting the appropriate remedy, it is not a "prerequisite" to the imposition of Rule 37(b) sanctions. *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 319 F.R.D. 122, 126 (S.D.N.Y. 2016); *see also Valentini v. Citicorp Fin. Servs. Corp.*, 589 F. App'x 1, 2 n.3 (2d Cir. 2014) ("an imposition of discovery sanctions requires neither a finding of bad faith nor a finding of prejudice."); *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 148-49 (2d Cir. 2010) ("[W]e, along with the Supreme Court, have consistently rejected the 'no harm, no foul' standard for evaluating discovery sanctions[.]").

Once a party has demonstrated its entitlement to sanctions, the Court has "broad discretion" in selecting an appropriate remedy among those available. *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2019 WL 4727537, at *28 (S.D.N.Y. Sept. 26, 2019) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 101 (2d Cir. 2002)), *aff'd sub nom. Joint Stock Co. "Channel One Russia Worldwide" v. Infomir LLC*, 2020 WL 1479018 (S.D.N.Y. Mar. 26, 2020); *see also Luft v. Crown Publishers, Inc.*, 906 F.2d 862, 865 (2d Cir. 1990) (the decision to impose a particular discovery sanction "is committed to the sound discretion of the district court and may not be reversed absent an abuse of that discretion"). There are,

12

however, "two basic limitations" that cabin the court's discretion. *Daval Steel Prods.* v. *M/V Fakredine*, 951 F.2d 1357, 1366 (2d Cir. 1991); *accord Sentry Ins.*, 720 F. App'x at 640. First, "the sanctions must be 'just[.]'" *M/V Fakredine*, 951 F.2d at 1366. Second, the sanctions "must relate to the particular claim to which the discovery order was addressed." *Id.*

> In considering what sanction to impose, the district courts appropriately consider:
>
> (1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance.

*Funk v. Belneftekhim*, 861 F.3d 354, 366 (2d Cir. 2017) (quoting *S. New England*, 624 F.3d at 144). "[S]anctions must be weighed in light of the full record in the case[.]" *Cine Forty-Second St. Theatre Corp. v. Allied Arists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979). Although "[t]aken out of context, perhaps, any individual incident of discovery misconduct may appear forgivable – especially when framed by some post-hoc excuse that rings of reasonableness," *Loc. Union No. 40 of the Intern. Ass'n of Bridge v. Car-Wi Const.*, 88 F. Supp. 3d 250, 264 (S.D.N.Y. 2015), "[i]f parties are allowed to flout their obligations, choosing to wait to make a response until a trial court has lost patience with them, the effect will be to embroil trial judges in the day-to-day supervision of discovery, a result directly contrary to the overall scheme of the federal discovery rules[.]" *S. New England*, 624 F.3d at 149 (quoting *Cine*, 602 F.2d at 1068).

### B. Analysis

McNulty's noncompliance is clear. Continuing a pattern of delay and disobedience established during the pleading phase of this action, he violated both the Case Management Order and this Court's 7/14/22 Order. Moreover, when he finally served his automatic disclosures and written response to plaintiffs' document demands – under threat of default – he denied possessing a single piece of paper responsive to any of plaintiffs' requests.

As explained in the 9/8/22 Order, McNulty's continuing claim that he did not understand his obligation to serve automatic disclosures or to respond to plaintiffs' document requests (until he received the OSC) is "not plausible," particularly in light of his history of ignoring court orders until threatened with default. *See id.* at 2. Consequently, although willfulness is not required as a predicate to the imposition of Rule 37(b) sanctions, I find, in this case, that McNulty's disobedience was indeed willful.

McNulty's claim that he is unable to produce any responsive written discovery is equally implausible. During the case management conference on March 29, 2022, McNulty advised the Court that he intended to produce unspecified "documentation," and added that he would "go through the roster of employees" to identify a third potential deponent, "based on documentation I need to produce." Yet a mere three months later, on September 5, 2022, he claimed that he was "not in possession of" any written evidence concerning any aspect of this case (including payroll records). Two months after that, he told the Court that his inability to produce any documents whatsoever stemmed from having been evicted from Low Bid's offices "in the middle of last August 2021," Def. Ltr. at 1, that is, seven months *before* the case management conference at which he advised that he would be producing "documentation" and reviewing the employee roster.

Even if McNulty lost the contents of Low Bid's office through eviction, as he claims, he was almost certainly capable of obtaining some of the documents requested by plaintiffs from third parties obligated to make them available to him upon request.[6] Those documents were therefore within his possession, custody, and control, as that term is used in Fed. R. Civ. P. 34(a)(1), obligating him to produce them in response to plaintiffs' requests. *See In re NTL, Inc. Sec. Litig.*,

---

[6] Corporate tax returns, for example, are ordinarily available from the corporation's tax accountants, and bank records are available from the bank.

14

244 F.R.D. 179, 195 (S.D.N.Y. 2007) ("[D]ocuments are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a nonparty to the action.") (internal citations omitted); *De Vos v. Lee*, 2008 WL 2946010, at *1 (E.D.N.Y. July 29, 2008) ("documents in the possession of a party's accountant are deemed within that party's control for purposes of Rule 34 discovery").

McNulty's claim that there is "no prejudice to plaintiff[s]" resulting from his failure to comply with the Court's orders, Def. Ltr. at 1, is meritless. First, while plaintiffs had access to some of the Corporate Defendants' records for auditing purposes, they clearly allege that Low Bid "failed to produce sufficient books and records for the Funds' auditors to complete all audits obligated under the terms of the CBA." Compl. ¶ 54. Moreover, many of the documents sought by plaintiffs pursuant to Rule 34 fall well outside of anything they would have seen during the auditing process even if defendants had cooperated.[7] In any event, plaintiffs are "not required to show prejudice resulting from the defendant['s] misconduct" in order to justify a severe sanction. *Sentry Ins.*, 720 F. App'x. at 640; *see also Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642 (1976) (the purpose of "severe" sanctions is "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent").

---

[7] *See, e.g.,* Pl. Doc. Req. 1 (seeking corporate formation documents, minutes of shareholder meetings, and ownership records); Pl. Doc. Req. 3-5 (seeking documents relating to equipment owned or leased by the Corporate Defendants); Pl. Doc. Req. 6-8 (seeking documents reflecting loans among and between the Corporate Defendants and their principals, including McNulty); Pl. Doc. Req. 11-12 (seeking tax returns for Low Bid and Premier Steel); Pl. Doc. Req. 28, 30-31 (seeking documents identifying the Corporate Defendants' owners, officers, directors, managers, and supervisors); Pl. Doc. Req. 29 (seeking documents reflecting the Corporate Defendants' capitalization).

Finally, I note that McNulty was clearly and repeatedly warned of the consequences of non-compliance, including on July 14 and August 30, 2022. *See* 7/14/22 Order at 3; OSC. Thus, he cannot (and does not) "credibly argue that he was not sufficiently warned that serious sanctions were imminent." *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 453 (2d Cir. 2013) (concluding that "the numerous warnings Birnbaum received – both while represented by counsel and not – were, collectively, sufficient to place him on notice of the pending default judgment"); *see also Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 303 (2d Cir. 2009) (dismissal was appropriate as a discovery sanction where magistrate judge's discovery orders "warned of the possibility of sanctions, including dismissal," notwithstanding plaintiff's "alleged health problems and the fact that English is his second language").

Given the degree of intransigence displayed by defendant McNulty, the duration of his noncompliance (which remains ongoing), the warnings he has been given, and the probable ineffectiveness of monetary sanctions (given his claim of financial distress),[8] significant non-monetary sanctions are in order. Plaintiffs is correct that a preclusion sanction – preventing McNulty from contesting plaintiff's allegations as to the matters where his failure to produce relevant documents has hampered plaintiff's ability to prove them – would be well-tailored to the species of misconduct on display in this action. *See Sentry Ins.*, 720 F. App'x. at 640 (affirming district court "precluding [defendant] from offering evidence to oppose Sentry's alter ego claim as a sanction for discovery violations," where "most of the delayed and outstanding production of documents related to entities controlled by Weber (and therefore to Sentry's alter ego claim)"); *Major League Baseball Prop., Inc. v. Corporación de Televisión y Microonda Rafa, S.A.*, 2022

---

[8] *See, e.g.*, Ans. ¶ 10 (asserting that neither Low Bid nor Premier Steel was "doing any business, currently"); McNulty Decl. ¶ 2 ("I am representing myself *pro se*, since due to my financial situation, I cannot afford an attorney.").

16

WL 3974409, at *6 (S.D.N.Y. Aug. 31, 2022) (precluding defendant "from offering any evidence concerning its assets or potential alter-ego or nominee relationships in opposition to post-judgment enforcement activities" due to defendant's "complete disregard of its discovery obligations and its flouting of this Court's Orders").

In this case, however, unlike *Sentry Ins*. and *MLB Prop*., plaintiffs have not pleaded a cognizable alter ego claim against McNulty. To be sure, they allege that Low Bid (the CBA signatory) and Premier Steel (the non-union shop) were alter egos (and that they constituted a single employer and a double-breasted employer), *see* Compl. ¶¶ 31, 33, 35, 41-45, 55, 57, 65, 73-75, 82. Similarly, they pray for a declaration that Low Bid and Premier Steel are "alter-egos, single employers, and/or double-breasted employers *with each other*." *Id*. at 14 ¶ 1 (emphasis added). But plaintiffs do not clearly allege that any of the Corporate Defendants was *McNulty's* alter ego, and do *not* request a declaration that to that effect.

Nor, for that matter, do plaintiffs allege the facts necessary to "pierce the veil" between the Corporate Defendants and McNulty. "Under New York law, a party seeking to pierce the corporate veil must show that (1) the alleged alter ego exercised complete domination over the corporation with respect to the transaction at issue; and (2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the corporate veil." *First Keystone Consultants*, 871 F. Supp. 2d 103, 124 (E.D.N.Y. 2012) (citing *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 63 (2d Cir. 2001)). Because "piercing the corporate veil is a fact-intensive inquiry," *One Step Up Ltd. v. Empire Apparel LLC*, 2022 WL 1446553, at *8 (S.D.N.Y. Apr. 13, 2022), *report and recommendation adopted,* 2022 WL 4124943 (S.D.N.Y. Sept. 9, 2022), the claimant must allege (among other things) facts sufficient to show that the principal "exercised complete domination" over the corporation. *See id*. at *7. In *One Step*, the court found that a third-

17

party plaintiff failed to plead an alter ego claim where it alleged that Adjimi "directed One Step to act," but did not allege "that One Step lacks the formalities and paraphernalia that are part and parcel of the corporate existence, or that One Step was inadequately capitalized, or that Adjmi deposited and withdrew One Step funds for personal rather than corporate purposes." *Id*. at *8. As the court noted, a corporate principal does not become liable for the company's debts merely because he exercises operational control: "If simply directing a company to take certain action were enough to establish veil-piercing, then virtually every CEO would be subject to personal liability. That is not the law." *Id*.

In in the case at bar, plaintiffs allege that McNulty was "an owner" of the Corporate Defendants, Compl. ¶ 79, served as president of Low Bid and Premier Steel, *id*. ¶ 12, and exercised "operational control" over all of the Corporate Defendants, in that he:

> controlled significant business functions of JM Enterprises, Low Bid and Premier Steel; determined employee salaries for JM Enterprises, Low Bid and Premier Steel; made hiring and firing decisions for JM Enterprises, Low Bid and Premier Steel; acted on behalf of and in the interest of JM Enterprises, Low Bid and Premier Steel; supervised and controlled employee work schedules and other conditions of employment; and was primarily responsible for devising, directing, implementing and supervising labor relations for JM Enterprises, Low Bid and Premier Steel.

*Id*. They also allege that the Corporate Defendants "disregarded corporate formalities" (but provide no specifics) and that McNulty "frequently negotiated grievances with the Union on behalf of [the Corporate Defendants]. *Id*. ¶ 35.[9] However, they never allege that McNulty "exercised complete domination" over any of the Corporate Defendants, nor that they were inadequately capitalized, nor that he used their funds as if they were his own. I note as well that in their third claim for relief, plaintiffs expressly predicate McNulty's joint and several liability not on any alter ego theory, but

---

[9] McNulty has formally denied these allegations. *See* Ans. ¶ 2. However, during the October 4, 2022 conference, McNulty stated that he owned 100% of Low Bid and 60% of Premier Steel. He told the Court that his son Matthew McNulty owned the other 40%.

rather on McNulty's alleged personal participation in a fraudulent scheme "to hire outside non-Union workers through Premier Steel and omit hours worked in covered employment from the remittance reports sent by Low Bid to the Funds." *Id.* ¶ 78.

It is a fundamental limitation on a discovery sanction that it "must relate to the particular claim to which the discovery order was addressed." *M/V Fakredine*, 951 F.2d at 1366. Consequently, the Court may not fashion a discovery sanction that would permit plaintiffs to win summary judgment on a claim they have not pleaded. The Court may, however, direct that the *facts* alleged in the Complaint concerning McNulty's relationship with the Corporate Defendants be taken as established for purposes of this action. Since these are also the facts that plaintiffs cannot fairly litigate without discovery from McNulty, the remedy is well-tailored to the offense – and will still permit McNulty to defend himself, if he can, from the claim that he orchestrated a fraudulent scheme to hire non-union workers through Premier Steel and thereby deprive the Funds of the contributions to which they were entitled for the work.

Because the sanction does not resolve all potential material factual disputes between plaintiffs and McNulty, it would be premature to entertain – much less grant – a summary judgment motion at this stage. Instead, the Court will direct the parties to complete deposition and expert discovery.

### III. CONCLUSION

Plaintiff's motion for discovery sanctions is GRANTED IN PART. It is hereby ORDERED that the following facts, as alleged in the Complaint, are taken as established for purposes of this action:

> 12. At all relevant times, George McNulty was an officer of JM Enterprises and is currently president of both Low Bid and Premier Steel. Upon information and belief, at all times relevant hereto, George McNulty exercised operational control over JM Enterprises, Low Bid and Premier Steel; controlled significant business

19

functions of JM Enterprises, Low Bid and Premier Steel; determined employee salaries for JM Enterprises, Low Bid and Premier Steel; made hiring and firing decisions for JM Enterprises, Low Bid and Premier Steel; acted on behalf of and in the interest of JM Enterprises, Low Bid and Premier Steel; supervised and controlled employee work schedules and other conditions of employment; and was primarily responsible for devising, directing, implementing and supervising labor relations for JM Enterprises, Low Bid and Premier Steel.

34. JM Enterprises, Low Bid and Premier Steel share common ownership, common management, common supervision (in the person of George McNulty and/or his family members)[.]

35. George McNulty . . . frequently negotiated grievances with the Union on behalf of JM Enterprises, Low Bid and Premier Steel.

79. George McNulty is an owner of JM Enterprises, Low Bid and Premier Steel.

It is further ORDERED that all remaining fact discovery, including fact depositions, shall be completed no later than **October 20, 2023**. Disclosure of expert evidence, including the identities and written reports of experts, as required by Fed. R. Civ. P. 26(a)(2)(A), (B), or (C), shall be made no later than **November 20, 2023**. The disclosure of expert evidence intended solely to contradict or rebut expert evidence on the same subject matter disclosed by the opposing party shall be made no later than **December 20, 2023**. Depositions of experts shall be completed no later than **January 19, 2024**. The Court will conduct a status conference on **October 31, 2023 at 10:00 a.m.** No later than **October 24, 2023**, the parties shall submit a joint status letter outlining the progress of discovery to date, as well as any settlement efforts.

Except as set forth herein, all provisions of the Case Management Order at Dkt. 107 remain in effect. The Clerk of Court is respectfully requested to close the motion at Dkt. 121.

Dated: New York, New York
       September 6, 2023

_____
**BARBARA MOSES**
**United States Magistrate Judge**